UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:04CR-83-R

UNITED STATES OF AMERICA

v.

TERRELL GRAY, a/k/a/ "Cam", a/k/a "Kogie," et al.

## MEMORANDUM OPINION

This matter is before the Court on Defendant Gray's Motion to Suppress (Dkt. # 181). A hearing was held in open court on May 16, 2005. The United States filed a Response (Dkt. # 246) to which the Defendant replied (Dkt. # 248). The United States also filed a responsive pleading at Dkt. # 257 and the Defendant filed a responsive pleading at Dkt. # 237, and this matter is now ripe for decision. For the reasons stated below, Defendant's Motion to Suppress is **DENIED**.

## BACKGROUND

Defendant Gray was indicted as part of a conspiracy to possess with the intent to distribute cocaine. The indictment included a count, Count 5, which charged Defendant Gray and Defendant Rice with conspiring to possess a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c). Part of the evidence supporting this indictment includes a gun seized from Mr. Gray during the course of a traffic stop in Atlanta, Georgia on May 21, 2004. Mr. Gray seeks to have the gun suppressed as evidence in this trial because, he claims, it was obtained by a seizure and a search that were effected in violation of the Fourth Amendment.

## ANALYSIS

The facts and circumstances surrounding the May 21, 2004 are somewhat in dispute. The

evidence indicates that Defendant Gray was driving a so-called "high dollar," or luxury, SUV as the lead car in a caravan of four or five of such vehicles on Cleveland Avenue in Atlanta, Georgia. As the caravan approached the intersection of Cleveland and Old Hapeville Road, Officer Price, a member of the Atlanta Police Department's auto-theft detection unit, allegedly saw the cars drive straight through the intersection from a dedicated left-turn only lane. Officer Price then radioed for backup in order to execute a traffic stop, to which Officer Hedley, who was nearby, responded. They pulled the vehicles over into a parking lot, and Officer Hedley approached the vehicle Mr. Gray was driving. When he did, and Mr. Gray lowered the window, Officer Hedley testified that he smelled marijuana coming from inside the vehicle. Officer Hedley testified that he then told Mr. Gray why he was being stopped and asked Mr. Gray if there were any weapons in the vehicle. Officer Hedley testified that Mr. Gray told him that there was a weapon, and indicated that it was wedged between the center console and the seat. Officer Hedley then detained the occupants of the vehicle, including Mr. Gray, while he searched the vehicle and found the gun between the center console and the seat. Officer Hedley secured the weapon and ran Mr. Gray's license, registration, VIN and criminal history, the last of which indicated that Mr. Gray was a convicted felon. On the basis of this information, Mr. Gray was charged with possession of a firearm by a convicted felon, carrying a concealed weapon, and carrying a pistol without a license, all in violation of Georgia law. He was not charged with the traffic violation for which he was stopped.

      At the scene of the arrest, Officer Price made an initial report detailing the information which supported the charges. In that report, Officer Price omitted the facts about the traffic violation upon which the stop was predicated. Officer Price testified that, due to this omission, the prosecuting authority decided not to prosecute Mr. Gray for the alleged violations of Georgia

law.[1]  Mr. Gray now challenges the use of the gun as evidence in this trial because, he argues, the stop and search of the vehicle which led to the discovery of the weapon were conducted in violation of the Fourth Amendment.

Mr. Gray challenges the stop on the grounds that it was made without probable cause. At the hearing, Officer Price testified that he suspected that the SUVs had been stolen, and that this suspicion led him to follow the caravan, but that he did not decide to pull them over until they committed a traffic violation (driving straight through an intersection from a dedicated left turn lane). Mr. Gray essentially asserts that Officer Price fabricated the traffic violation in order to justify a traffic stop actually based upon Officer Price's suspicion that the vehicles in question were stolen. The parties agree that if Officer Price did not have reason to believe that a traffic violation had occurred, his stop would have been without probable cause and, conversely, that if he did have reason to believe that a traffic violation had occurred, the fact that he was also suspicious that the vehicles were stolen would not cause the stop to have been in violation of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 813 (1996). There was conflicting evidence presented at the hearing as to exactly what Mr. Gray was told about the reason he was stopped, and Mr. Gray makes much of the fact that Officer Price failed to include the traffic

---

[1] Although some documents were admitted into evidence concerning the prosecutor's decision not to pursue the case, they indicate only that it was not pursued due to an "improper stop." The documents do not specify what part of the stop was considered "improper" by the prosecutor's office, so the Court will examine the testimony before it as to the events surrounding the stop and independently evaluate the constitutionality thereof. In doing so, the Court recognizes the impossibility of knowing whether an "improper" stop is equivalent to a "likely unconstitutional" one in the judgment of the prosecutor. The Court also notes the distinction between a prosecutor's exercise of discretion (i.e., deciding whether to prosecute a case) and the Court's responsibility here to evaluate for exclusionary rule purposes the officers' conduct for compliance with the Fourth Amendment. That is to say, the Court has read and considered the documents, but gives them only limited weight in its credibility and factual determinations for these reasons.

violation on his initial report. Even so, and even assuming that this failure led to the Atlanta prosecutor's decision not to pursue the charges against Mr. Gray in that jurisdiction, the Court nevertheless believes that Officer Price did have probable cause when he decided to stop the vehicles on the basis of the traffic violation. The Court finds Officer Price's testimony to be credible.

Mr. Gray also alleges that Officer Hedley, who actually performed the stop of Mr. Gray's vehicle, searched the vehicle and ultimately charged Mr. Gray, performed the search without probable cause for the search. The United States argues that Officer Hedley had probable cause to search the vehicle both because he smelled marijuana coming from the vehicle and because, when he asked Mr. Gray whether he had a weapon, Mr. Gray indicated that he did. Mr. Gray denies ever having made such an admission. The Court is once again faced with a credibility determination, and the Court again finds the Officer's account more credible than Mr. Gray's. Both the smell of marijuana and Mr. Gray's statement that there was a weapon in the car provided Officer Hedley with probable cause sufficient to support his search of the vehicle. Therefore, the stop and search that led to the discovery of the weapon now involved in this case did not violate the Fourth Amendment and the evidence gathered as a result of that search and seizure should not be suppressed.

## CONCLUSION

For the reasons above, Defendant's Motion to Suppress is **DENIED**. An appropriate order shall issue.